People v Smith (2024 NY Slip Op 03973)

People v Smith

2024 NY Slip Op 03973

Decided on July 26, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, DELCONTE, KEANE, AND HANNAH, JJ.

452 KA 20-01440

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SAMUEL J. SMITH, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (DREW R. DUBRIN OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered July 22, 2020. The judgment convicted defendant, upon a jury verdict, of attempted murder in the second degree, assault in the first degree and criminal use of a firearm in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed as a matter of discretion in the interest of justice and on the law and a new trial is granted.
Memorandum: Defendant appeals from a judgment convicting him, following a jury trial, of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), assault in the first degree
(§ 120.10 [1]), and criminal use of a firearm in the first degree
(§ 265.09 [1] [a]). This was defendant's second trial on the same indictment. The first trial also resulted in a judgment of conviction, but the Court of Appeals reversed an order of this Court and ordered a new trial based on its determination that Supreme Court erred in refusing defendant's request for a missing witness instruction (People v Smith, 33 NY3d 454, 460-461 [2019], revg 162 AD3d 1686 [4th Dept 2018]).
Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is against the weight of the evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]). We agree with defendant, however, that the court erred when it declared that the victim was unavailable to testify due to her stated intention to invoke her Fifth Amendment privilege against self-incrimination (see US Const Amend V; see also NY Const, art I, § 6). As a result of that determination, the court allowed the People to introduce in evidence the victim's testimony from the first trial pursuant to CPL 670.10 (1), thereby precluding defense counsel from questioning the victim about various crimes she committed after the first trial and before the second trial.
Assuming, arguendo, that defendant's particular contention regarding anticipatory perjury is not preserved for our review, despite the fact that the court specifically addressed that very contention (see CPL 470.05 [2]), we exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Shortly before the retrial, the victim informed the prosecution that she could no longer remember the identity of the shooter, notwithstanding that she was able to remember him only a few months earlier during an interview with the prosecution to prepare for the retrial. Following a Sirois hearing, the court determined that the People failed to establish by clear and convincing evidence that "defendant [was] directly behind" the victim's sudden inability to remember. At that point, the victim's attorney informed the court that he would direct her to invoke her Fifth Amendment privilege against self incrimination "at the beginning of her testimony." Outside the [*2]presence of the jury, the victim was called to testify and, aside from answering a question about her name, she invoked the Fifth Amendment privilege in response to any additional questions and indicated that she would do so for "any questions regarding the incident."
Defense counsel opposed any determination that the victim was unavailable, contending that her inability to remember did not make her an unavailable witness. The court noted that the issue was that the victim's potential testimony that she could not remember would not be truthful given that she did remember just a few months before the retrial. The victim's attorney agreed with the court's statement that the concern was for the "potential perjury" that might arise from the victim's future testimony at the retrial. The court then declared that the victim was unavailable as a witness. That was error.
"The Fifth Amendment provides that no person shall be compelled in a criminal case to be a witness against himself (or herself)" (United States v Fridman, 974 F3d 163, 174 [2d Cir 2020], cert denied — US &mdash, 141 S Ct 2760 [2021]; see US Const Amend V; see also NY Const, art I, § 6). The Fifth Amendment privilege extends "not only to answers that are directly incriminatory but also to those that, while not themselves inculpatory, 'would furnish a link in the chain of evidence needed to prosecute the claimant' " (United States v Greenfield, 831 F3d 106, 114 [2d Cir 2016]; see Ohio v Reiner, 532 US 17, 20 [2001 per curiam]; United States v Johnson, — F3d &mdash, &mdash, 2024 WL 207868, *1 [2d Cir 2024]). The person attempting to invoke the privilege must establish that the threat of self-incrimination is "substantial and real, and not merely trifling or imaginary" (Marchetti v United States, 390 US 39, 53 [1968] [internal quotation marks omitted]; see United States v Apfelbaum, 445 US 115, 128 [1980]; United States v DeSalvo, 26 F3d 1216, 1221 [2d Cir 1994], cert denied 513 US 870 [1994]). Thus, "[b]efore a witness . . . is entitled to remain silent, there must be a valid assertion of the [F]ifth [A]mendment privilege . . . The [trial] court must decide whether a witness' silence is justified and [must] require him [or her] to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity" (United States v Boothe, 335 F3d 522, 526 [6th Cir 2003], cert denied 541 US 975 [2004] [internal quotation marks omitted]).
Here, the record demonstrates that the victim feared not that her testimony at the retrial would reveal that her testimony from the first trial was perjurious, but that her potential future testimony—i.e., that she did not remember the identity of the shooter—would itself be perjurious. The distinction is critical inasmuch as "a future intention to commit perjury or to make false statements . . . is not by itself sufficient to create a substantial and real hazard that permits invocation of the Fifth Amendment" (Apfelbaum, 445 US at 131 [internal quotation marks omitted]; see Zicarelli v New Jersey State Commn. of Investigation, 406 US 472, 480 [1972]; Earp v Cullen, 623 F3d 1065, 1070-1071 [9th Cir 2010], cert denied 563 US 1037 [2011]).
"A witness may not claim the privilege of the [F]ifth [A]mendment out of fear that he [or she] will be prosecuted for perjury for what he [or she] is about to say. The shield against self-incrimination in such a situation is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told" (United States v Whittington, 783 F2d 1210, 1218 [5th Cir 1986], reh denied 786 F2d 644 [5th Cir 1986], cert denied 479 US 882 [1986] [emphasis added]; see United States v Allmon, 594 F3d 981, 987 [8th Cir 2010], cert denied 562 US 981 [2010]; Boothe, 335 F3d at 526-527). "Fear of a perjury prosecution can typically form a valid basis for invoking the Fifth Amendment only where the risk of prosecution is for perjury in the witness' past testimony" (United States v Vavages, 151 F3d 1185, 1192 n 3 [9th Cir 1998]).
"[T]he court focuses inquiry on what a truthful answer might disclose, rather than on what information is expected by the questioner" (Zicarelli, 406 US at 480). Simply put, the Fifth Amendment "does not permit a witness to invoke the privilege on the ground that he [or she] anticipates committing perjury sometime in the future" (DeSalvo, 26 F3d at 1221). There is "no doctrine of 'anticipatory perjury' " (Apfelbaum, 445 US at 131).
New York cases do not hold to the contrary. New York permits invocation of the Fifth Amendment where the anticipated truthful testimony would subject the witness to perjury charges based on prior sworn testimony or sworn statements, i.e., where the proposed testimony would be so inconsistent with earlier testimony that the witness could be charged with perjury arising from the prior testimony (see e.g. People v Bagby, 65 NY2d 410, 413-414 [1985]; People [*3]v Dekenipp, 105 AD3d 1346, 1348 [4th Dept 2013], lv denied 21 NY3d 1041 [2013]). That situation typically occurs when a witness recants either testimony given earlier in the same trial (see Bagby, 65 NY2d at 413-414) or sworn testimony given in a prior trial or grand jury proceeding (see e.g. People v Knowles, 79 AD3d 16, 24 [3d Dept 2010], lv denied 16 NY3d 896 [2011]; People v Whitley, 14 AD3d 403, 404 [1st Dept 2005], lv denied 4 NY3d 892 [2005]).
During oral argument on appeal, the People contended for the first time that potential testimony from the victim that she could not remember who shot her would have been perjurious because it would have been "inconsistent" with her testimony from the first trial within the meaning of Penal Law § 210.20. Even if that contention were properly before us, which it is not, we would reject it on the merits. Section 210.20 provides that, "[w]here a person has made two statements under oath which are inconsistent to the degree that one of them is necessarily false, where the circumstances are such that each statement, if false, is perjuriously so," the inability of the People to establish which statement is false does not preclude a prosecution for perjury. Here, the fact that the victim could not identify the shooter at the retrial does not render her testimony at the first trial "necessarily false" considering that the first trial took place approximately six years earlier and the victim had no prior relationship with the shooter.
We therefore conclude that the court erred in declaring the victim unavailable and allowing her testimony from the first trial to be read to the jury at the retrial. Inasmuch as the victim was the only person who identified defendant as the person who shot her, we cannot conclude that the evidence of defendant's guilt is overwhelming, and therefore the error cannot be deemed harmless (see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]). The judgment must be reversed and the matter remitted for a new trial.
In light of our determination, we do not address defendant's remaining contentions.
Entered: July 26, 2024
Ann Dillon Flynn
Clerk of the Court